AO 106 (Rev. 04/10) Application for a Search Warrant

FILED

APR 17 2018

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                              DEPUTY

# UNITED STATES DISTRICT COURT
## for the
### Southern District of California

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

One Black Apple iPhone, Model A1660
FCC ID BCG-E3085A, IC: 579C-E3085A

)
)
)
)
)
)

Case No.

**18MJ1817**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

as described in Attachment A

located in the _____Southern_____ District of _____California_____, there is now concealed *(identify the person or describe the property to be seized)*:

as described in Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 1028A and 1708 | Aggravated Identity Theft and Theft of Mail Left for Collection |

The application is based on these facts:

as described in Attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Patricia Mendoza, U.S. Postal Inspector
*Printed name and title*

Sworn to before me and signed in my presence.

Date: ____04/16/2018____

_____
*Judge's signature*

City and state: San Diego, California

Andrew G. Schopler, U.S. Magistrate Judge
*Printed name and title*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **One Black Apple iPhone** | ) AFFIDAVIT OF |
| Model A1660 | ) U.S. POSTAL INSPECTOR |
| FCC ID BCG-E3085A | ) PATRICIA MENDOZA |
| IC: 579C-E3085 | ) IN SUPPORT OF |
| | ) SEARCH WARRANT |
| | ) |
| IN THE MATTER OF THE SEARCH OF: | ) |
| Case Number: | ) |
| | ) |

I, Patricia Mendoza, a U.S. Postal Inspector, having been duly sworn, depose and state as follows:

## **INTRODUCTION**

1.      I make this affidavit in support of an application for a search warrant in furtherance of an identity theft investigation and mail theft conducted by the US Postal Inspection Service for the following target property:  one Black Apple iPhone, Model A1660, FCC ID BCG-E3085A, and IC: 579C-E3085 (**"Target Telephone"**) as described in **Attachment A**.

2.      The **Target Telephone** was seized incident to the arrest of Shawn Coughran (aka Shawn Coughram) for violations of California Penal Code Sections 530.5 (Identity Theft), 496(d) (Possession of Stolen Vehicle), 529.3 (False Impersonation), 148.9 (False Identification to a Police Officer), at the 1441 Quivera Road, San Diego, California on

1

November 3, 2017. It is believed that the **Target Telephone** was used by Coughran to communicate with co-conspirators to arrange for and coordinate identity theft. Probable cause exists to believe that the **Target Telephone** contains evidence relating to violations of Title 18, United States Code Sections 1028A (aggravated identity theft) and 1708 (theft of mail left for collection). The **Target Telephone** is currently in the possession of United States Postal Inspector Service Field Office in San Diego, California, which is within the Southern District of California.

3.     Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation. In addition, the information contained in this affidavit is based upon review of various official reports, upon conversations with other Federal Agents and law enforcement officers, and my personal observations and knowledge.

## EXPERIENCE AND TRAINING

4.     I am a United States Postal Inspector ("Postal Inspector") and have been so employed since July 2004. From July 2004 through October 2004, I attended the Basic Postal Inspector Academy located in Potomac Maryland. I was initially assigned to the International Mail Theft Team in Los Angeles, CA where I was responsible for conducting domestic and international mail theft investigations. In July 2007, I transferred to San Diego and was assigned to the Mail Theft and Violent Crimes Team

until November 2014. Beginning in November 2014, I was assigned to the Prohibited Mailings Illegal Narcotics Team. My duties included investigating violations of the federal Controlled Substances Act, and related offenses. In June 2015, I completed 40 hours of specialized training in narcotics from the U. S. Postal Inspection Service, which included instruction regarding individuals using the U.S. Mails to transport controlled substances and proceeds from the sale of controlled substances.

5.     In May 2016, I was re-assigned to the Mail Theft and Violent Crimes Team in San Diego. As a member of the Mail Theft and Violent Crimes Team, I am responsible for investigating crimes against the United States Postal Service (USPS) and its employees involving the use of stolen mail, stolen or counterfeit checks and money orders, stolen or fraudulent credit cards, identity theft, and cases involving the manufacture of stolen or fraudulent personal identification cards. As a Postal Inspector, I have received numerous hours of training related to economic crimes, schemes and techniques used by suspects to commit fraud and identity theft. These techniques include "washing," the process of using a chemical mixture of various household chemical items in order to lift ink used to complete documents, such as checks and money orders, to alter documents and negotiate the checks and money orders for monetary gain. I also completed a forty (40) hour POST certified course on Identity Theft and a forty (40) hour POST certified course on California Penal Code 832 Laws of Arrest. Based on my training, experience, and speaking with other investigators, I know that financial crimes

often involve a complex organization of multiple individuals acting together to conspire, aid or abet.  Based on my training and experience, I know in the case of identity theft, suspects often commit other crimes such as check fraud or making counterfeit identification or access cards.  For this reason, the suspects usually gather information, process the information and often store the information on the above-described device to generate counterfeit identification cards, access cards and /or counterfeit checks.

6.      The presence of identification, financial instruments, and other documents in the names of persons other than the suspects will likely provide evidence of other unsolved thefts.  I know the type of crime alleged to have occurred here is conspiratorial in nature and is often perpetrated against many victims.  The presence of other personal identifying information will enable me to locate other victims of theft.

7.      I know in the case of identity theft, suspects often collect identification cards, mail, credit cards, checks, internet login information, passwords, and other forms of personal identifying information in order to build financial profiles that can be used to commit identity theft for monetary gains.   Suspects use the personal identifying information of others to open credit card accounts, bank accounts, obtain lines of credit for monetary gains, and even establish financial relationships with persons or entities under the assumed stolen identity.  Suspects often keep these profiles, even after the victims have taken measures to stop any future financial fraud from occurring.  Suspects maintain these used profiles because they will often attempt to use the financial profile

4

again in the future once the victims have become complacent. Such financial profiles are often found on printed documents, handwritten documents, and/or electronic storage media such as cell phones.

## FACTS SUPPORTING PROBABLE CAUSE

### Identity Theft Victim – Carlos Bouras

8.     On or about August 31, 2017, United States Postal Service (USPS) management discovered a fraudulent mail hold placed on mail addressed to 407 Village Center Drive, Encinitas California, which is within the Southern District of California.[1] The current resident, Waleska Lopez, contacted the Encinitas Post Office to inquire about packages she had not received. Lopez explained to USPS that she currently resides at 407 Village Center Drive and she was expecting four parcels mailed to her address between August 26, 2017 and August 28, 2017 that had not been delivered or received. According to Lopez, Carlos Bouras and his wife Maria Lourdes Bouras had recently moved to the state of Washington, but she still received some mail at her current address in Encinitas. When USPS management looked into the mail delivery for 407 Village Center Drive, Encinitas California, they found there was a temporary mail hold placed for the address under the name of "Carlos Bouras." After further follow up, the Encinitas Post Office found the mail including the parcels addressed to 407 Village Center Drive, Encinitas, California, had been picked up by an unknown person. USPS management

---

[1] All locations discussed herein are within the Southern District of California unless otherwise indicated.

5

stated the parcels had tracking numbers, however there were no scans showing when USPS had handed the parcels to a person or persons. USPS management was unable to provide the date of when the mail and parcels were picked up from the Encinitas Post Office.

9.      On September 6, 2017, USPS management contacted Postal Inspector Patricia Mendoza and provided a copy of the on-line mail hold printout placed on postal customer Carlos Bouras with an address listed of 407 Village Center Drive, Encinitas, CA 92024. The mail hold printout showed a start date of August 25, 2017 and an end date of September 6, 2017 with the (619) 732-8316 (**Phone Number #1**) listed. Further investigation revealed that **Phone Number #1** is a Google Voice number. Users of Google Voice can communicate using the same number on any device.

10.     On September 23, 2017, at approximately 3:00 pm, Postal Inspector Mendoza received a telephone call from the USPS management regarding a white male subject wearing a blue T-shirt and jeans at the Encinitas Post Office attempting to pick up the mail addressed to 407 Village Drive, Encinitas, CA. USPS management advised the male subject that the mail was out for delivery with the carrier and asked the male subject to provide a contact number so they could contact him once the mail returned to the office. The male subject provided **Phone Number #1** as his contact. USPS management observed a white van pick up the male subject at the post office and provided a photograph to Postal Inspector Mendoza. Postal Inspector Mendoza reviewed the image,

6

which showed the white male with dark hair wearing a blue t-shirt, blue jeans, and black tennis shoes standing outside the white van with U-Haul decals on the side and a black decal on the front left with the number "BE 3865 C." The white male subject appeared to be talking to another unknown male subject sitting in the driver's seat.

11.    On September 23, 2017, USPS management stated the male subject later identified as "Shawn Coughran" returned to the Encinitas Post Office after speaking to the unknown male subject in the van. USPS management observed "Coughran" with keys that opened a PO Box inside the Encinitas Post Office. USPS Management later identified that PO Box as number 231219 under the name "Richard S. Power" with the address of 407 Village Center Drive, CA 92024 noted on the USPS box application. An address of 2128 Balboa Ave., Apt. 1 San Diego, CA 92109 had been crossed out with the initials of "RP". Attached to the PO Box application was a DMV printout with Carlos Bouras' personal information including the address on Village Center Drive, his date of birth, and a small photo located at the top of the document that appeared to be Shawn Coughran.  On the DMV printout was the following note along with a signature:  "I Carlos Bouras certifies Richard Power lives in my residence @ 407 Village Center Dr. 92024".

12.    On September 23, 2017, a supervisor from the Encinitas Post Office contacted Carlos Bouras and obtained a copy of Bouras driver's license via e-mail. The driver's license was from the state of Washington, bore a different driver's license

7

number, and listed his current address in Spokane, WA 99201. The issuing date was April 8, 2017 and the expiration date was November 26, 2022.

13.   On September 25, 2017, Postal Inspector Mendoza received a telephone call from USPS management stating the male subject called the Encinitas Post Office on the afternoon of September 23, 2017 to let them know he would be returning to pick up the mail destined for 407 Village Center Drive on Monday morning.

14.   On September 25, 2017, Postal Inspector Mendoza went to the Encinitas Post Office to review the video surveillance from Saturday, September 23, 2017.  While reviewing the video surveillance footage, Postal Inspector Mendoza was informed the male subject was in the lobby of the Encinitas Post Office waiting to pick up the mail addressed to 407 Village Center Drive.  Postal Inspector Mendoza was able to see the male subject, Shawn Coughran, from the monitor. Coughran was wearing a plaid shirt and was in the lobby by himself.  USPS management provided copies of the documents given to them by Coughran, including the USPS PO Box application and the DMV printout. Postal Inspector Mendoza also noticed the signature on Bouras' Washington driver's license did not appear to match the one from the DMV printout provided to the post office by Coughran.

15.   On September 25, 2017, Postal Inspector Mendoza contacted the San Diego County Sheriff's Department, spoke to Deputy Pirri, and provided him a background of the case.  Postal Inspector Mendoza described the white male subject to Deputy Pirri and

8

sent him a photo via text. Postal Inspector Mendoza explained to Deputy Pirri that there was a white van with no decals bearing an Arizona license plate (AZ #AH65617) in the parking lot of the post office. Postal Inspector Mendoza told Deputy Pirri that there appeared to be other occupants in the van. Deputy Pirri arrived at the Encinitas Post Office and came in contact with two subjects in the van: Andrew Stegemiller and John Sader sitting in the white Ford van. Stegemiller was arrested for being in possession of narcotics. While Deputies spoke to the occupants, Coughran walked out of the Encinitas Post Office, Deputies saw him head north towards Garden View and shortly after lost sight of him. Deputies stated they drove around the area but were unable to find him.

16.     On September 25, 2017, Postal Inspector Mendoza contacted a DMV Investigator to verify the DMV printout information provided to the post office by Coughran. Postal Inspector Mendoza provided the information listed on the DMV printout to the DMV investigator, who confirmed the document was counterfeit. The information on the DMV document did not match their DMV records. The DMV investigator stated the California driver's license belonging to Carlos Bouras (DL #C3724005) was last issued in October 2008 and Bouras had moved to Washington in June 2017.

17.     A search of law enforcement databases found that **Phone Number #1**, which was listed on the initial mail hold as a contact number, was associated with Shawn Coughran. Postal Inspector Mendoza also found the van with Arizona license plate

9

number AH65617 was registered to the U-HAUL with an address of 2727 N. Central Ave., Phoenix, AZ.

18.   U.S. Postal Inspectors obtained DMV printout of Coughran and the video surveillance from the Encinitas Post Office on September 25, 2017, which showed a person matching Coughran's DMV photo.

19.   On September 25, 2017, Postal Inspector Mendoza contacted Carlos Bouras regarding his driver's license.  Mr. Bouras stated there was a hole punched through his California Driver's license so he would be able to apply for his Washington driver's license.  Mr. Bouras said he would be compiling a list of credit cards that were opened fraudulently using his personal information.  Mr. Bouras said he did not give anyone authorization to place a mail hold through the USPS, to pick up his mail or to open credit card accounts in his name.  Additionally, Mr. Bouras stated he received a notice on his credit report of several telephone lines opened using his personal information.  Mr. Bouras provided his e-mail address and stated he would forward any additional information on any new accounts opened using his information.

20.   On September 26, 2017, Postal Inspector Mendoza received information from Ms. Bouras regarding a mail hold placed on their current address in Spokane, WA 99201 listing **Phone Number #1** as the contact number.  The start on this mail hold showed a start date of September 22, 2017 and an end date of September 26, 2017.  On this same date, Postal Inspector Mendoza contacted the post office in Spokane to ensure

10

the mail hold was cancelled and to resume delivery to the Bouras current address in Washington.

### Mail Theft Victim – Torrey Pines Property Management

21.    On September 5, 2017 at around 1:36 a.m. and again at 5:08 a.m., someone similar in appearance to Coughran broke into Torrey Pines Property Management's (TPPM) mailbox, located at 7840 Ivanhoe Avenue, La Jolla, California, and stole mail containing approximately $30,000 in rent checks and money orders. That same day, TPPM's owner, Lawrence Crandall, received a call from Money Tree informing him that Coughran was trying to cash checks made out to TPPM.   Crandall informed Money Tree that Coughran was not authorized to cash checks for TPPM.  Crandall stated that Money Tree returned the checks to him later.

22.    Linda Contreras, a Money Tree employee, later confirmed that she called TPPM on September 5, 2017. Contreras works at the Money Tree located on El Cajon Boulevard in San Diego.  She also explained that Coughran presented his California Driver's License (CDL) and attempted to cash money orders payable to TPPM at the El Cajon Money Tree. Coughran claimed that the money orders were payment for rental properties he owned.  Contreras asked Coughran to provide proof that TPPM was his business. Coughran left and returned later that day with a business document for TPPM that appeared doctored because it had several different business names on the same document. Contreras informed Coughran that earlier that day she had spoken with a

11

TPPM representative who informed her that they did not know Coughran. Contreras called TPPM again. A TPPM representative spoke briefly with Coughran and then again with Contreras to confirm that they did not know Couhgran. Coughran left. Contreras kept the money orders Coughran had brought to cash, which included:

  a. A Western Union Money Order (WUMO) issued by Ralphs for $500 payable to "TPPM Shawn Coughran;"

  b. WUMO issued by Ralphs for $500 payable to "TPPM Shawn Coughran;"

  c. WUMO issued by Ralphs for $250 payable to "TPPM Shawn Coughran;"

  d. WUMO with an address of "4737 Mansfield St., San Diego CA 92116" for $1,000 payable to "TPPM Shawn Coughran;"

  e. WUMO with an address of "342 Nautilus St., La Jolla, CA 92037" for $1,000 payable to "TPPM;"

  f. WUMO with an address of "342 Nautilus St., La Jolla, CA 92037" for $1,000 payable to "TPPM;"

  g. WUMO with an address of "342 Nautilus St., La Jolla, CA 92037" for $465 payable to "TPPM;"

  h. WUMO with an address of "343 Prospect St." for $1,000 payable to "TPPM Sean Coughran;"

23.     On September 5, 2017, an unidentified male deposited the following checks made out to TPPM into a Wells Fargo (WF) account belonging to a Jeff Girandola at an ATM:

      i.   WF check #6314 from Ralph and Kim Moreno for $2,900;

      j.   WF check #9231 from Wills Books for $1,000;

      k.   WF check #118 from Chris Kilcoin and Andrea Wohlsen for $2,530;

      l.   WF check #479 from W. Alan Scales for $1,155;

      m. WF check #100 from an unknown account holder for $12; and

      n.  WF check #1066 from Secret Spa for $391.

24.     On September 5, 2017, a woman believed to be Jennifer Farnam deposited a check belonging to Norma Gutierrez for $1,540 and made payable to "TPPM Jenninifer [sic] Farnam" at a Wells Fargo branch located on Camino Canada in El Cajon, California. A U.S. Postal Inspector later reviewed Wells Fargo surveillance images and confirmed that the woman appears to match a California Department of Motor Vehicles (DMV) photo for Jennifer Farnam.

25.     On September 25, 2017, Coughran attempted to cash a $545 money order belonging to Elikem Motem at a Money Tree located on Midway Drive in San Diego. The money order was originally made payable to "Torrey Pines Property Management" but the name was crossed out and replaced with "Shawn Coughran." The Midway Money Tree refused to cash the money order because it appeared altered.  The Midway Money

Tree employee handling the transaction, Janeth Patron, provided U.S. Postal Inspectors with a photocopy of Coughran's CDL.

26.    On September 26, 2017, Elikem Motem notified Postal Inspectors of two money orders intended for TPPM, one for $1,000 and another for $545, which were cashed fraudulently at the Pacific Beach Post Office. Elikem Motem had purchased these money orders to pay TPPM for his rent. U.S. Postal Inspectors retrieved copies of the cashed money orders. Both money orders from Motem were originally made out to "Torrey Pines Property Management," but TPPM's name was crossed out and "Shawn Coughran" was written above. The money order for $545 was the same money order Coughran attempted to cash at the Midway Money Tree on September 25, 2017. The money orders had what appeared to be a driver's license number C9675438 and an expiration date 10/21/17 handwritten on the front of the both money orders. It was later determined the number C9675438 matched a DMV document found in Coughran's wallet and seized by SDPD during the search incident to arrest on November 3, 2017. Surveillance video was not available for the Pacific Beach Post Office transactions.

27.    On September 27, 2017, U.S. Postal Inspector Bott returned to the Midway Money Tree to collect surveillance video from Coughran's September 25, 2017 attempt to cash a money order. When U.S. Postal Inspector Bott exited the Midway Money Tree, he saw Coughran in the same parking lot. U.S. Postal Inspector Bott conducted surveillance and eventually saw Coughran enter a white Toyota with a Lyft Decal.

14

Postal Inspectors subpoenaed Lyft and discovered the phone number for **Target Telephone** was associated with the ride on that day and starting from that location.

### Coughran's Arrest

28.     On November 3, 2017, San Diego Police Department arrested Shawn Coughran in the lobby of the Hyatt Regency Mission Bay after Coughran attempted to retrieve a suitcase that he had left behind. Coughran arrived at the Hyatt Regency Mission Bay in a dump truck, along with Jason Murphy, who was also arrested for identity theft. At the time of his arrest, Coughran identified himself as "Shawn Coughram," one of his previously mentioned aliases. San Diego Police Department seized the **Target Telephone** from Coughran when he was arrested.

29.     Coughran was read his *Miranda* rights and elected to waive his rights. He then requested to retrieve a number for Carlos Bouras, **Phone Number #1**, from the **Target Telephone** and claimed that it was his business partner. The number that he retrieved was the number he used when placing holds using Carlos Bouras' identity. Coughran was also shown a photograph of Carlos Bouras and asked whether he knew the person depicted. Coughran claimed that he did not know the individual.

30.     San Diego Police Officers conducted a search Coughran incident to arrest. During the search of Coughran's person, they retried an interim driver's license with Coughran's photograph and Elikem Motem's name. Additional record checks revealed that a report was filed by U-Haul listing Motem as a suspect in a U-Haul vehicle theft

after someone had rented a U-Haul truck in Motem's name. Coughran is suspected in other instances of similar vehicle theft. Coughran had previously cashed money orders that Motem had purchased to pay TPPM his rent.

31.     During the search incident to arrest of Coughran, SDPD seized multiple credit cards in other people's names, California identification cards not bearing Coughran's or Murphy's name, notebooks containing credit card numbers, social security numbers and dates of birth. Among the items seized there was also a handwritten note found with Carlos Bouras' address in Spokane, his social security number and date of birth. However, the year noted as the date of birth was incorrect.

32.     In addition, later investigation revealed that dump truck in which Coughran had arrived belonged to Herc Rentals, which had rented the dump truck to Coughran under the business UBWEBBIN LLC, a business owned by Maria Bouras, wife of Carlos Bouras. San Diego Police Officers interviewed Maria Bouras, who confirmed that she did not know Coughran. Maria Bouras reported that she began having credit issues for a few months and discovered that numerous accounts had been open using her business without authorization. Maria Bouras stated that the most recent account was opened with Herc Rentals to rent equipment under UBWEBBIN LLC and Carlos Bouras' name. Maria Bouras further confirmed that she had lived in Encinitas up until the beginning of 2017, when she and her husband moved to Spokane, Washington. Maria Bouras stated that she did not know anyone by the name of "Shawn Coughram" or Jason Murphy.

33.     Based upon my experience and training, consultation with other law enforcement officers experienced in identity theft investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to identity and mail theft committed Coughran and his co-conspirators, such as telephone numbers, incoming and outgoing calls, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the cellular telephones described herein.

## METHODOLOGY

34.     It is not possible to determine, merely by knowing the **Target Telephone**'s make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in

memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

35.     Following the issuance of this warrant, I will collect the **Target Telephone** and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

36.     Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## CONCLUSION

37.     Probable cause exists to believe that Coughran violated Title 18, Sections 1028A (aggravated identity theft) and 1708 (theft of mail left for collection) and that the

18

**Target Telephone** was to facilitate the commission of these offenses. Coughran was arrested with the **Target Telephone** after arriving in a dump truck that he rented using Carlos Bouras' name. In addition, Coughran was arrested with a fraudulent identification card that listed Elikem Motem as the name and had Coughran's photograph. Moreover, the arrest took place just over two months after the mail theft from TPPM and Coughran's fraudulent mail hold using Mr. Bouras' identity. Based on conversation with Mrs. Bouras, Coughran continued to use this fraudulent identity in the months after the fraudulent mail hold. Given the ongoing identification fraud associated with Coughran under Mr. Bouras and Mr. Moten's name, up and including the date of Coughran's arrest, I also believe that probable cause exists to believe that evidence and instrumentalities of illegal activity committed by Coughran continues to exist on the **Target Telephone**.

[Continued on next page . . . ]

38.    Based upon my experience and training, consultation with other investigators experienced in identity theft investigations, consultation with other sources of information, and the facts set forth herein, I believe that the items to be seized set forth in **Attachment B** are likely to be found in the property to be searched described in **Attachment A**.    Therefore, I respectfully request that the Court issue a warrant authorizing me, a U.S. Postal Inspector, or another federal law enforcement agent or officer specially trained in digital evidence recovery, to search the items described in **Attachment A**, and seize the items listed in **Attachment B**.

I swear the foregoing is true and correct to the best of my knowledge and belief.

PATRICIA MENDOZA
United States Postal Inspector
United States Postal Service

Subscribed and sworn to before me this 16th day of April 2018.

THE HONORABLE ANDREW G. SCHOPLER
United States Magistrate Judge

20

# ATTACHMENT A

## PROPERTY/ITEMS TO BE SEARCHED

The **Target Telephone** to be searched is:

One Black Apple iPhone
Model A1660
FCC ID BCG-E3085A
IC: 579C-E3085A



The **Target Telephone** is currently in the possession of the United States Postal Inspector Service at its San Diego, California field office.

1

# **ATTACHMENT B**

## **PROPERTY/ITEMS TO BE SEARCHED/SEIZED**

Authorization to search the **Target Telephone** described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the **Target Telephone.** The seizure and search of the **Target Telephone** will be conducted in accordance with the affidavit submitted in support of the warrant.

The evidence to be seized from the **Target Telephone** will be electronic records, communications, and data such as emails, text messages, photographs, audio files, videos, browsing history, document files, and location data, for the period of August 31, 2017 to November 3, 2017:

a.  tending to identify the personal identifying information of others;

b.  tending to identify co-conspirators, criminal associates, or others involved in the manufacturing, trafficking, distribution, or use of any valid, altered or counterfeit (e.g. Department of Motor Vehicles counterfeit identifications),

c.  tending to identify the user of, or persons with control over or access to, the **Target Telephone**; and/or

d.  tending to identify evidence of mail theft, access fraud, bank fraud, mail fraud, or transactional fraud to include any accounts at any financial institutions, named entity and identified parties having signature authority, date(s) the account(s) opened/closed, copies (front & back) of any monetary instrument, identification presented to open the account(s), any and all addresses associated with the accounts including residence(s), employment and/or business records; any application(s) for any bank product/service provided by any financial institutions; identification of and monthly statements pertaining to any checking, savings, loans, lines of credit, credit cards and or investment accounts; any postal box rentals by or under the signatory authority of any party associated with any account including the United States Post Office branch and box number; issued, blank, or

1

cancelled checks, deposit tickets and items deposited including copies of the front and reverse side of each document; credit and debit memos; any signature card(s); monthly statements for each and every account; documents reflecting disbursement of loan proceeds and/or lines of credit; loan ledger sheets; any incoming/outgoing wire transfers involving the above named Shawn Coughran, Shawn Coughram, Sean Coughran, Shawn Coughram, Carlos Bouras, Elikem Motem, Torrey Pines Property Management. and/or tenants of Torrey Pines Property Management, identification of any assets acquired and or liquidated, any pledged collateral, purchase of any money orders, cashier's checks, bank checks, traveler's checks purchased and or negotiated; copies of all deposits or withdrawals in excess of $100 to include copies front and back of each item comprising the deposit and identification of all cash deposits; all correspondence to and from the bank; and notes/memoranda to the file; and

e.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**which are evidence of violations of Title 18, United States Code Sections 1028A (aggravated identity theft) and 1708 (theft of mail left for collection).**